(Nos. 5928–5936.   October 27, 1933.)

F. H. MICHAELSON, as Receiver of the PAYETTE-BOISE WATER USERS' ASSOCIATION, LTD., Respondent, v. AMOS J. MILLER et ux., ARCHIE L. KLINGENSMITH et ux., N. F. BOW et ux., THOMAS W. TARR et ux., NOAH GRIFFITH et ux., WALTER GRIFFITHS, T. A. WALTERS et ux., J. A. MARTIN et al., and ARCHIE L. KOLLENBORN et al., Appellants.

[26 Pac. (2d) 378.]

T. A. Walters and Walter Griffiths, for Appellants.

Thomas E. Buckner and Charles F. Reddoch, for Respondent.

SUTPHEN, D. J.—This appeal involves nine cases, consolidated for consideration by this court, brought by the

respondent for the purpose of foreclosing liens on lands belonging to the respective appellants, to enforce payment of an assessment of $1.83 per share upon the stock of the Payette-Boise Water Users' Association, Limited, appurtenant to such land.

The Payette-Boise Water Users' Association, Ltd., hereinafter referred to as the association, is a corporation incorporated in 1904 under the general incorporation laws of this state by settlers upon the Payette-Boise Reclamation Project for the purpose, among other things, of providing for an adequate supply of water for the irrigation of the lands of the shareholders, and to contract with the United States for accomplishment of that purpose, with general authority to represent and act for the water users on such project. By-laws were thereupon adopted prescribing the conditions whereby settlers on the project might become stockholders and receive water for the land to which their stock was made appurtenant. A form of stock subscription contract was incorporated in the by-laws, which could not be amended or modified except upon approval of the Secretary of the Interior. Thereafter in 1906 a contract was entered into between the association and the United States, under authority of the act of Congress of June 17, 1902, for the irrigation and reclamation of the lands described in the articles and by-laws of the association. This contract provides, among other things, for the construction of irrigation works by the government; that only members of the association be accepted as applicants for rights to the use of water available by means of the proposed works; that the association guarantee the payments for cost of irrigation works, and for the levy and collection of assessments by the association against its stockholders.

Stock subscription contracts in form prescribed by the by-laws were executed by the respective appellants or by their predecessors in interest, under the terms of which each subscribed for a stated number of shares of the capital stock of the association and such shares were made appurtenant to the land of the subscriber. As a condition of

continued ownership of such stock and participation in the benefits thereof the subscriber agreed, upon notice from the Secretary of the Interior that water was available, to make prompt application for a water right to the proper authorities of the United States. It was provided therein that upon the failure so to do, the subscriber, his heirs and assigns, should have no right as a shareholder of the association. Said subscription contract also contained a provision that assessments as they were made from time to time should become a lien against said lands of the subscriber and against the shares of stock and all rights represented thereby, and until paid or discharged should be and remain a lien thereon and be enforced by foreclosure and sale of the stock and lands in the manner provided by law for the foreclosure of mortgages.

In 1917 public notice was given by the Secretary of the Interior that water was available for the lands of the project and announcement was made as to the form and requirements of the water right application to be made by the stockholders as required by their stock subscription contracts and by the contract of 1906 between the association and the United States.

The required water right applications were promptly executed. The respective applicants agreed, among other things, to pay annual instalments of the construction charge in addition to annual charges for operation and maintenance, and that such construction and annual charges be a lien upon the land. It was further agreed that should such lands be included in an irrigation district and a contract made by such district and the United States, providing for the purchase of water rights for such lands by the district from the works constructed by the United States, then the application should be canceled and the Secretary of the Interior would release of record the lien therein given.

In 1921 a decree was entered in the district court of the United States for the district of Idaho, southern division, pursuant to stipulation of the parties, in a case between the association and the United States and others, by the

terms of which decree the stockholders of the association were required within sixty days thereafter to execute another water right application in form prescribed by the stipulation and supplemental contract referred to and made a part of said decree.

Some of the stockholders of the association including the appellants herein refused and neglected to execute water right applications in conformity with said decree and stipulation. Considerable dissension among the stockholders occurred and the offices of two directors of the association who did not execute the water right application in conformity with said decree were, by resolution of the board of directors of said association, declared vacant. The stockholders who refused to execute such water right applications were for a time excluded from voting at stockholders' meetings, but it does not appear that their stock was canceled on the books of the association or that their water was shut off or interfered with.

In 1926 irrigation districts were organized comprising in all, all the lands in the project not theretofore included in irrigation districts. Contracts were entered into between the several districts and the United States, providing for the repayment to the United States of construction costs, taking the place of the contract of 1906 between the association and the United States, and of the water right applications of 1917. Thereafter the Secretary of the Interior executed and recorded a release of the liens in favor of the United States created by any and all said water right applications and consented to the release of all stock subscription contracts in connection with the lands in said district.

In January of 1930 the district court of the seventh judicial district of the state of Idaho, in and for Canyon county, made a decree ordering an assessment of $1.83 per share upon each share of stock in said association, which decree was thereafter affirmed by this court. (*Smith v. Dickerson*, 50 Ida. 477, 297 Pac. 402.) The respondent as receiver for the association thereupon brought the instant

suits to enforce payment of said assessments. For further details see *Smith v. Dickerson, supra,* and *Payette-Boise Water Users' Assn. v. Cole,* 263 Fed. 734.

Appellants contend that at the time the assessment was made they were not stockholders of the association, first, because their refusal to execute the new water right application provided for by the federal court decree of 1921 severed their relation as stockholders of the association; second, because such refusal was treated as a severance of such relation by the parties concerned; and third, because the formation of the irrigation districts and the execution of contracts between the districts and the United States terminated such relation, if any then existed.

In support of the first reason mentioned for their contention they say that prior to the federal court decree of 1921 their liabilities to the United States were determined and became fixed, and that said decree required them to change their obligation from an individual liability to a joint and several obligation. They contend that they had the right to refuse to execute the new water right application provided for by said decree, and that their refusal severed their relation as stockholders of the association. Appellants construe all the transactions between themselves, the association and the United States previous to said decree as constituting a three party contract and assert that the same was nullified by the acts of the association and the United States showing an intention to materially change the contract and by appellants' refusal to consent thereto.

In the consideration of this phase of appellants' contention we are confronted with the peculiar situation and relationships existing at the time of the federal court decree of 1921. The appellants or their predecessors in interest and others were settlers upon lands in an arid region. It was necessary for them to secure water for the irrigation of their lands. The government undertook to provide irrigation works for the settlers and established a reclamation project. The association was formed by the settlers to provide a centralized agency to represent them. Judge

Dietrich, in the case of *Payette-Boise Water Users' Assn. v. Cole, supra,* referred to this identical association as being in a class by itself and explains this assertion (quoting from page 743 of said decision):

"Nominally the landowners became stockholders, and their contracts are stock subscriptions; but in reality the sole purpose of the whole scheme was, through an organization like plaintiff, to provide a centralized representative with authority to act for the settlers. The real relation is between the settlers and the government, and the subscriptions for stock were in reality only agreements to purchase water rights."

It is apparent that the water right applications which were signed by the appellants or their predecessors in interest do not clearly define the respective rights and liabilities of the settlers, and it does not appear that the decisions in the cases of *Payette-Boise Water Users' Assn. v. Cole, supra,* or *Payette-Boise Water Users' Assn. v. Bond,* 269 Fed. 159, rendered prior to the federal court decree of 1921, settled the differences between the settlers and the government, as many things were left for future determination before the rights and liabilities of the settlers and the government could be accurately determined.

At the time of the commencement of the suit by the association in which the federal court decree of 1921 was entered it thus appears that there was no certainty in the minds of either the settlers or the representatives of the government as to the respective rights and liabilities of the parties and that the real purpose of said suit was to define and fix those rights and liabilities. The association representing the settlers in said suit entered into a compromise stipulation with the representatives of the government and the decree in question was entered pursuant to such stipulation. It is evident that the association was attempting to safeguard the stockholders' interests, that it was acting in their behalf in a common cause which affected all their interests alike, and that the stipulation and decree fixed

and defined the stockholders' rights and liabilities which were previoulsy indefinite and uncertain.

Appellants assert that the nature of their obligation to the government was materially changed by the decree, but in view of the uncertainty as to the rights and liabilities of the respective parties under the water right application of 1917, the questionable validity of such instrument, and the unsettled differences then existing between the settlers and the government, which one can more fully appreciate after reading the decisions of Judge Dietrich in the cases of *Payette-Boise Water Users' Assn. v. Cole, supra,* and *Payette-Boise Water Users' Assn. v. Bond, supra,* it is not apparent and appellants fail to point out wherein their rights were in fact affected or their obligation increased by the stipulation and decree of 1921. Even if the decree in question did result in changing the obligation of the settlers in some respects, appellants have not shown that any of their vested rights were affected or that the association, as their representative, did not have the power and authority to make such change nor is it apparent that the federal court was lacking in jurisdiction or authority in entering the decree in question. On the other hand it appears that the association had the right to and did represent the stockholders, including the appellants herein. Appellants were evidently a minority of the stockholders in the association; they disagreed with the majority and refused to execute the water right application prescribed by the said decree of 1921. Such refusal released them neither from their obligation to the government nor from their liability under their stock subscription contracts and by-laws of the association to pay the debts of the association lawfully incurred.

■ ■ We are next concerned with the contention that from and after appellants' refusal to execute the water right application as required by the federal court decree of 1921 the association treated appellants as no longer being stockholders therein. At a meeting of the board of directors of the association held February 22, 1922, a resolution was passed purporting to vacate the offices of two of the direc-

tors for failure to sign the water right application in question. No provision is contained in the federal decree of 1921 for the forfeiture of the stock in case of the failure of a stockholder to execute the water right application provided for therein, and it does not appear that the board had the power to declare the offices of the directors therein named vacant for the reasons therein specified. However, it might appear from the preliminary recitals to said resolution and also from preliminary recitals to another resolution passed at the same meeting instructing the executive committee to ascertain facts from the Secretary of the Interior, that a majority of the directors were of the opinion that the stock certificates of those members of the association who had failed to execute the water right application provided for in the federal decree of 1921 were subject to forfeiture.

No attempt to enforce any of the recitals contained in said resolutions appears to have been made; no order was made canceling such certificates nor do the same appear to have been canceled on the books of the association. The record shows that even after such refusal the appellants received, without interruption, the water to which their stock certificates entitled them. At a meeting of the directors of said association held December 18, 1922, a resolution for the amendment of the by-laws was adopted which in substance provided that at all elections thereafter to be held any person offering to vote must have first executed the water right application in form prescribed by the federal court decree of 1921. It does not appear that this proposed amendment to the by-laws was approved at the next or any subsequent meeting of the stockholders. Article IV, section 1, of the by-laws of the association provides:

" . . . . all by-laws or amendments thereof enacted by the Board of Directors shall be void after the next annual meeting of the shareholders unless approved by such shareholders at such meeting."

The record does not justify the conclusion that the directors by their acts terminated appellants' relations as stock-

holders in the association, and the fact that appellants continued at all times since to receive and enjoy the benefits of such relation should estop them from so asserting.

█ █ The contention that the formation of the irrigation districts, the inclusion of the lands of appellants therein and execution of contracts between the districts and the United States operated as a discharge from liability for assessments subsequently levied by the court to provide funds for the payment of debts of the association, was made by the stockholders in the case of *Smith v. Dickerson, supra,* and while not directly passed upon by the court was evidently regarded without foundation. Briefly, the record shows that early in 1926 the settlers on the project decided that the purposes for which the association was formed could be better accomplished in the future through irrigation districts. In January of that year a resolution was passed by the directors of the association to the effect that they would withdraw opposition to the districts completing their organization upon the districts assuming the unpaid obligations of the association. The districts completed their organization and entered into contracts with the United States by the terms of which the districts assumed the obligations of the stockholders and the association to the United States, but the districts did not assume the other obligations of the association. The United States in 1928 released of record the liens in its favor created by any and all water right applications on or in connection with any and all lands in such irrigation districts, consented to the release of all stock subscription contracts and released all liens thereunder given or intended for the security of the United States. No action was ever taken by the association, either for the release of the stockholders' obligations to it or the liens in its favor created thereunder. The government only released the obligations in its favor and its release did not, nor was it intended to, affect in any way the stockholders' obligation to the association for the payment of its debts other than those to the government. The obligations of the stockholders to the United States and those to

the association were separate and severable obligations and a release of one did not discharge the other.

The appellants have enjoyed the benefits of their stock subscription contracts for many years and should not now be permitted to deny a liability thereunder for debts which they, through their authorized representatives, lawfully incurred. The stock subscription contract was one of the preliminary steps taken by the subscriber to secure a water right for his land which, without such water right, would have been almost valueless. No one except a subscriber could receive water from the project and appellants admit that they have continuously received water since it was first available. Although their lands are now in irrigation districts it is evident, from a reading of the contract between the government and the district, that the settlers' water right therein is based upon rights secured by virtue of their subscription contracts.

██ The land owned by most of the appellants was community property and it is urged that because the wife failed to join in the execution and acknowledgment of either the stock subscription contract or the water right application, or both, a lien could not be impressed upon such community property. Again, the appellants urge ·that these two instruments are parts of a single contract and contend that it requires the proper execution of both to impress a lien upon the land.

Although both the stock subscription contract and the water right applications purport to create liens in favor of the United States, only the stock subscription contract purports to create a lien in favor of the association. The consideration for the lien in favor of the government does not depend upon or relate to the consideration for the one in favor of the association, and it is clearly apparent that the lien provided for in the stock subscription contract in favor of the association is not dependent upon the one created by said contract in favor of the government nor the one created by the water right application. The lien sought to be foreclosed in the instant cases is created by the

provisions of the stock subscription contract. It is a separate and severable part of the transaction between the parties and we are not here concerned with the question as to the validity of any of the water right applications made by the stockholders to the government.

The appellants apparently rely upon the provisions of sec. 31–913, I. C. A., to support their contention that the lien on community property, to secure the assessments by the association, is void unless the wife joined with the husband in executing and acknowledging the subscription contract. The stock subscription contracts in all the cases were executed prior to the effective date of the amendment to sec. 2686, Rev. Code, now sec. 31–913, I. C. A.; consequently we are only concerned with the provisions of said section prior to said amendment. Sec. 2686, Rev. Code, provided:

"Husband's Control of Community Property. The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate; but such power of disposition does not extend to the homestead or that part of the common property occupied or used by the husband and wife as a residence."

The record does not disclose that any of the lands involved were homesteads. In all the instant cases where the record shows that the subscription contract was executed by a married man whose wife did not join with him in the execution thereof there is but one case, that of Archie L. Klingensmith et ux., where such record shows that the land, at the time the stock subscription contract was executed by the husband, was occupied or used by the husband and wife as a residence. In that case the subscription contract affecting part of the lands now owned by said appellants was executed December 18, 1911, by a predecessor in interest who, at the time, was a married man living with his wife on the land. Appellants have not attempted to show nor is it apparent that the provisions of the stock subscription contract amounted to a disposition of the community prop-

erty, occupied and used by the husband and wife as a residence, within the meaning of said section.

The appellant N. F. Bow also asserts that at the time the stock subscription contract affecting his land was signed by him title to the land therein mentioned was in the state of Idaho, and that he only held the same under a State Land Sale Certificate, and therefore had no authority to create a lien against the land. His stock subscription contract was signed by him December 4, 1912, and at that time sec. 41–2302, I. C. A., was in effect. This section applies to sales of state lands under government irrigation works and provides, among other things, that all purchasers of state lands:

" . . . . shall apply for a water right from the government works, and subscribe such lands into the water users' association of the project."

It clearly appears that appellant Bow was authorized to execute the stock subscription contract in question and there is no merit to his contention.

Appellant Walters asserts that the stock subscription contract covering the land now owned by him on said project purports to be the contract of the Caldwell Banking and Trust Co., but is signed "A. K. Steunenburg, Cashier," and is therefore void. The acknowledgment to the contract purports to be the acknowledgment of the corporation and it is clear that the cashier was acting in behalf of the bank and not on his own behalf. Neither the bank nor its successors in interest rejected the transaction but instead took and received the benefits. In 21 C. J., pp. 1206, 1207, it is stated:

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith."

The record also shows that appellant Walters, at the time he made the water right application for the land, expressly affirmed that he was a member of the association holding its stock covering said land.

Finally, it is urged by all the appellants that the stockholders are not liable for any deficiency which might remain after foreclosure sale of their lands. The by-laws of the association and the stockholders' subscription contracts created a personal obligation to pay assessments levied and security for the same by lien upon the stock and land appurtenant. In *Payette-Boise Water Users' Assn. v. Fairchild*, 35 Ida. 97, 205 Pac. 258, it was held that the lien was in effect a mortgage and that there can be but one action for such debt, and that such action must be a foreclosure action, but nothing therein can be construed as prohibiting a deficiency judgment after foreclosure. In view of the fact that the stockholder by his contract has placed himself in the same category as a mortgagor in the usual case we can see no reason why a personal liability should not obtain to pay such deficiency as provided by sec. 9–101, I. C. A., relative to mortgage foreclosures.

The respective judgments are ordered affirmed, with costs to respondent.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.